**Phyllis R. WAJDA, Plaintiff**

v.

**R.J. REYNOLDS TOBACCO COMPANY, et al.,**
**Defendants**

**No. CIV.A.98–12152GAO.**

United States District Court,
D. Massachusetts.

March 28, 2000.

30

Burton A. Waisbren, Jr., Burton A. Waisbren, Jr., M.D., J.D., Boston, MA, for Phyllis R. Wajda.

Thomas E. Peisch, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, Donald J. Wood, Connarton, Wood & Callahan, Boston, MA, Harold K. Gordon, Jones, Day, Reavis & Pogue, New York, NY, William P. Corbett, Jr., Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, Mark Robert Seiden, Barbara Spalten Levy, Jones, Day, Reavis & Pogue, New York, NY, for R.J. Reynolds Tobacco Co.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Thomas J. Griffin, Jr., John B. Daukas, Brenda R. Sharton, Robert M. Braceras, Goodwin, Procter & Hoar, Boston, MA, Kenneth D. Small, Sherin & Lodgen, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, for Philip Morris Inc.

John H. Henn, David R. Geiger, Gregory T. Moffatt, Evan Georgopoulos, Foley, Hoag & Eliot, Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Kenneth D. Small, Sherin & Lodgen, Boston, MA, Jeffrey S. Follett, Foley, Hoag & Eliot, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, for Brown & Williamson Tobacco.

Franklin C. Huntington, IV, Hutchins, Wheeler & Dittmar, Boston, MA, for B.A.T. Industries, P.L.C.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Richard M. Zielinski, Robert D. Ryan, Hill & Barlow, Boston, MA, Kenneth D. Small, Sherin & Lodgen, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, for Lorillard Tobacco Co.

David H. Sempert, Kelly L. Wilkins, Cornell & Gollub, Boston, MA, for Liggett Group, Inc.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Kenneth D. Small, Sherin & Lodgen, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, Scott Gediman, Nelson Gediman, Gediman & Gediman, P.C., Boston, MA, for New England Wholesale Tobacco Co., Inc.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Kenneth D. Small, Sherin & Lodgen, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, Robert J. Gilbert, Edward J. Denn, Gilbert & Renton, Andover, MA, for Albert H. Notini & Sons, Inc.

Robert J. Muldoon, Jr., Sherin & Lodgen, Boston, MA, Thomas E. Peisch, Conn, Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, Kenneth D. Small, Sherin & Lodgen, Boston, MA, David A. Brown, Sherin & Lodgen LLP, Boston, MA, William P. Corbett, Jr., Conn Kavanaugh, Rosenthal, Peisch & Ford, Boston, MA, for Council for Tobacco Research–U.S.A., Inc.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff, Phyllis R. Wajda, brought this action against several tobacco compa-

nies and distributors in Massachusetts Superior Court, and the defendants then removed the case to this Court, which has jurisdiction under 28 U.S.C. § 1332. The plaintiff claims that the defendants, conspiring with other members of the tobacco industry, deceived the public about the health risks of smoking and placed an unreasonably dangerous product into commerce. The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. It will succeed only if the facts alleged by the plaintiff, taken as true, would not be sufficient to justify a judgment in the plaintiff's favor. The plaintiff is entitled to the presumption that all well-pleaded factual averments in the complaint are true, and the Court must indulge all reasonable inferences stemming from those allegations that favor the plaintiff. On the other hand, "bald assertions" and unsupported conclusions do not qualify as "well-pleaded" facts, and are of no assistance to a plaintiff in defeating a motion to dismiss. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 15 (1st Cir.1989).

Even in cases removed from state court, the adequacy of pleadings is measured by the federal rules. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985). Federal Rule of Civil Procedure 8(a)(2) governs most pleadings and requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It must allege facts that sufficiently support, either directly or by inference, every material element necessary to sustain recovery. *See Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 138 (1st Cir.1989); *Gooley v.*

*Mobil Oil Corp.*, 851 F.2d 513, 514–15 (1st Cir.1988).

The present complaint fails to pass muster even under this indulgent standard. It is essentially a form complaint, one of many similar complaints filed in this Court by counsel who represent this plaintiff as well as others asserting claims related to tobacco use. This complaint, like the others, mounts a general attack on the tobacco industry, but, unlike a well-pleaded complaint, it reveals very little about the plaintiff's individual case. The inadequacy of the pleading is addressed theory by theory below.

In the end, it seems that the plaintiff regards it as sufficient to say that she was a smoker who was made ill by smoking the defendants' products. To this extent, the complaint pleads facts sufficient to support an element of causation. But causation is only one part of a complete claim under any satisfactory theory of recovery applicable to this case. To the extent that each of the potentially available causes of action requires an element in addition to causation, the plaintiff has failed to plead it, and the complaint is consequently defective in all of its counts.

### Fraudulent Concealment

The complaint describes, in a most summary fashion, a vast and lengthy conspiracy involving the defendants and other tobacco companies which was intended to "mislead, deceive and confuse" the plaintiff and the public about the risks of smoking. The complaint provides no details as to whether, or how, the plaintiff came to rely detrimentally on material misstatements or omissions that were the fruit of this conspiracy.

Because these allegations sound in fraud, they must meet a standard higher than the basic pleading requirements found in Rule 8. Pleadings which portray a conspiracy to defraud or conceal may not be painted in broad strokes; they must state the factual foundations of that claim

with particularity. Fed.R.Civ.P. 9(b). *See also Hayduk,* 775 F.2d at 443. That means the plaintiff must at least tell who said (or failed to say) what, when, and where. *See Doyle,* 103 F.3d at 194; *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990). In addition to reporting the statements with particularity, she must also say, at the very least, how any such statements materially affected the plaintiff's decision to smoke. *See Doyle,* 103 F.3d at 193.

There are no particulars alleged in the complaint's general recitation of the conspiracy and fraudulent concealment, especially as it may pertain to the plaintiff's own use of tobacco. Notably, the complaint does not specify what material omissions or deceptive statements anchor its assertion of conspiracy to defraud.

The insistence on particularity in claims of fraud is neither technical fussiness nor form for form's sake. Particularity not only gives a defendant sufficient information to understand what statement, omission, or conduct is called into question and to formulate an answer to the complaint, *see Doyle,* 103 F.3d at 194, it also permits a court, when called upon to do so, to evaluate the sufficiency of the plaintiff's legal theories. A plaintiff may not take refuge in generality from such an evaluation. It is fair to expect a plaintiff to state the particulars and, if she does not, to conclude that sufficient particulars do not exist.[1] An overly general—and thus uninformative—allegation of fraud may thus suffer the same disposition as a particular allegation that is, judged in its particularity, legally insufficient. That is, it may, on motion, be dismissed.

### Failure to Warn

At several points in the complaint, the plaintiff summarily asserts that the defendants failed to warn their customers adequately about the health risks of smoking. That allegation plays a double role in this complaint. On the one hand, the failure to warn may be part of the secret campaign the plaintiff alleges the defendants took part in to quash awareness about the risks of smoking and to deceive the public and the plaintiff into consuming a product that, if the dangers had been known to them, they would have refrained from using. As discussed above, this aspect of the complaint sounds in fraud, and the pleadings that concern it are not sufficiently particular to meet Rule 9.

■ On the other hand, a failure to warn the plaintiff of the reasonably known dangers associated with ordinary use of the product is actionable under Massachusetts law. *See Vassallo v. Baxter Healthcare Corp.,* 428 Mass. 1, 696 N.E.2d 909, 922–24 (1998). Even so, the pleadings must do more than vaguely assert that the defendants generally failed to warn people, including the plaintiff, of the dangers of smoking. *Some* facts must be pleaded. Here again, this complaint simply cobbles together a few bald and conclusory assertions without any factual context. It is impossible to consider whether the facts pleaded entitle the plaintiff to relief when there are no facts pleaded.

■ Indeed, the generality of the complaint language makes it impossible to determine the merits of one of the defendants' principal legal objections to the plaintiff's "failure to warn" theory. The defendants argue that the state law claim has been preempted by § 5(b) of the Public Health Cigarette Smoking Act of 1969 ("Smoking Act"), Pub.L. 91–222, 84 Stat. 87, codified as amended, 15 U.S.C.

---

1. In addition to the pleading standards set out in Rules 8 and 9, Rule 11 includes a provision pertinent here. By presenting a pleading to the court, a party's attorney certifies that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). An attorney who properly gives such a certification ought to have no difficulty in seeing to it that the particularity requirement of Rule 9(b) is fulfilled.

§§ 1331–1340. That provision prohibits states from imposing legal requirements or prohibitions based on smoking and health with respect to the advertising and promotion of cigarettes that are packaged and sold in conformance with the Act. *See* 15 U.S.C. § 1334. Accordingly, no liability may be imposed under state law for any post–1969 failure by the defendants to warn consumers through their promotion and advertising about the potentially harmful health effects associated with smoking. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 524–25, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality); *id.* at 552–54, 112 S.Ct. 2608 (Scalia, J., joined by Thomas, J., concurring in part and dissenting in part). However, the statute does not preclude liability for any failure to warn that happened before the Act was passed, *see id.* at 524–25, 112 S.Ct. 2608 (plurality); *id.* at 534, 112 S.Ct. 2608 (Blackmun, J., joined by Kennedy and Souter, JJ., concurring in part and dissenting in part), and state-law duties that have no bearing on advertising or promotion of cigarettes would also be unaffected by the Smoking Act, *see id.* at 524–25, 528, 112 S.Ct. 2608; *see generally* Laurence H. Tribe, *American Constitutional Law* Vol. 1, § 6–29, at 1190–95 (3d ed.2000).

■ Because of the generality of the complaint, it is not possible to know whether she asserts a pre- or post-Smoking Act failure to warn claim, or whether any failure occurred in a non-advertising context. In other words, by pleading so generally, the plaintiff effectively prevents the defendants, and the Court, from evaluating whether the claim is preempted or not. When that happens, the pleading is inadequate.

*Negligent Product Design and Breach of Implied Warranty*

■ The plaintiff alleges that the defendants' cigarettes were unreasonably dangerous. Massachusetts ascribes liability for manufacturing and selling unreasonably dangerous products, through a cause of action either for negligence or breach of warranty. *See doCanto v. Ametek, Inc.*, 367 Mass. 776, 328 N.E.2d 873, 878 (1975) (describing duties to safely design and provide adequate warning); *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964, 970 (1978) (same duties and standard applied under breach of warranty theory).[2] To survive the motion to dismiss on this claim, the plaintiff must allege sufficient facts to demonstrate that the defendants manufactured or sold the product, the product was unreasonably dangerous or unsuited for ordinary use at the time it left the defendants' hands because of a defect, the plaintiff was using the product in an intended or reasonably foreseeable manner when she was injured, and the product's defect was a legal cause of the plaintiff's injury. *See Lally v. Volkswagen Aktiengesellschaft*, 45 Mass.App.Ct. 317, 698 N.E.2d 28, 43, *review denied*, 428 Mass. 1106, 705 N.E.2d 277 (1998). "A product may be unreasonably dangerous because of a defect in design." *Commonwealth v. Johnson Insulation*, 425 Mass. 650, 682 N.E.2d 1323, 1330 (1997). Evaluating the product's design involves weighing "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Back v. Wickes Corp.*, 378 N.E.2d at 970 (quoting *Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 455 (1978)).

The plaintiff does not allege that there were specific defects in the design of defendants' cigarettes. Although the plaintiff states, in the sort of conclusory fashion that is insufficient, *see Doyle*, 103 F.3d at

---

**2.** In addition to pursuing reasonably safe designs for their products, manufacturers must also warn buyers of the known risks that accompany the normal use of the product. That theory is addressed in the preceding section, relating to the failure to warn claim.

194, that safer alternative designs for cigarettes were available, there is not the slightest description of what those designs were or why they would have avoided causing harm to the plaintiff if adopted.

 The failure to allege specifics may be no accident. One has the sense in reading the complaint that the plaintiff's claim is that *all* cigarettes are unreasonably dangerous, not that the defendants' cigarettes were, because of some unique feature of design, more dangerous than others. This is not so much a defective design claim as it is a claim of strict liability. It is true that Massachusetts law recognizes that those who engage in abnormally dangerous activities may be held strictly liable for resulting harms. *See Clark–Aiken Co. v. Cromwell–Wright Co.,* 367 Mass. 70, 323 N.E.2d 876 (1975) (collecting cases). In Massachusetts, this form of tort has been applied to manmade flooding, explosive blasting, and escaped wild animals, but it has not been applied in the domain of products liability. *See Vassallo,* 696 N.E.2d at 922–23 (overturning previous cases that established strict liability for failure to warn in products liability cases); *Kyte v. Philip Morris Inc.,* 408 Mass. 162, 556 N.E.2d 1025, 1030 (1990) (allowing product liability claim to go forward because it alleged that defendant's cigarettes were particularly carcinogenic and addictive without alleging that all cigarettes were inherently defective).

### Breach of Express Warranty

 The plaintiff says that the defendants expressly warranted that their cigarettes were fit and safe for consumption, and that they violated those warranties. Express warranties are defined by Massachusetts statute to include affirmations of fact or promises made by sellers relating to their goods, as well as descriptions or samples of the goods. *See* Mass. Gen. Laws ch. 106, § 2–313.

The plaintiff at no point pleads the existence of anything remotely resembling an express warranty. No affirmation of fact or promise is ever mentioned or even proposed to exist.

Inasmuch as the complaint claims a breach of express warranty it is insufficiently pled.

### Intentional Infliction of Nicotine Addiction

The plaintiff alleges that the defendants designed and marketed cigarettes with the intent to cause the disease of nicotine addiction. Callously ignoring the increased risk of death associated with higher rates of cigarette consumption, the defendants wanted to get their consumers hooked in order to boost consumption and sales of their products, according to the plaintiff.

The defendants have argued that this count should be dismissed because no such tort has yet been recognized in Massachusetts, a characterization which the plaintiff does not deny but which is not in itself fatal. *See George v. Jordan Marsh Co.,* 359 Mass. 244, 268 N.E.2d 915, 918 (1971) ("No litigant is automatically denied relief solely because he presents a question on which there is no Massachusetts judicial precedent.... The courts must, and do, have the continuing power and competence to answer novel questions of law arising under ever changing conditions of the society which the law is intended to serve.").

*Williams v. Monarch Mach. Tool Co.,* 26 F.3d 228 (1st Cir.1994), cited by the defendants, does not hold otherwise. In that case, the plaintiff brought a diversity suit in the federal district court for claims based on Massachusetts law. He then requested a jury instruction that had no support in extant Massachusetts law. The district court refused to allow it, and the Circuit affirmed on the ground that a litigant who seeks the federal forum in diversity may not expect that court to blaze new trails in state law. *See id.* at 232. Here, the plaintiff did not seek the federal forum. She has been forced to litigate here after the case was properly removed. It would be imprudent simply to disregard a novel

theory of relief when the plaintiff intended to litigate before a state tribunal open to the consideration of novel claims.

■ When the plaintiff pleads a novel theory of tort, the plaintiff is ordinarily permitted to develop the facts so that the novel theory may be "explored and assayed in the light of actual facts rather than a pleader's suppositions." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1357, at 343 & n. 45 (1990). But the indulgence for pleadings that assert novel claims is not unlimited. In the case of torts long known and well-defined, it may be sufficient to plead a set of facts which, falling into a familiar pattern, suffice to set forth the legal theory. But when the tort alleged has never been defined—where there is no familiar pattern—the mere recitation of facts alone, without adequate articulation of a legal theory, is insufficient. The pleadings must make some effort to define the tort beyond the purely factual recitations.

■ Here, for instance, the plaintiff has pleaded a cause of action for battery in this complaint. Before venturing to recognize a newly proposed tort for "intentional infliction of nicotine addiction," a court might like to know whether, and to what extent, this new tort would differ from the old, recognized tort for battery. One cannot tell from this complaint. Significantly, plaintiff's counsel, who produced the complaint, apparently cannot tell either. At a hearing on this issue, counsel was asked by the Court to explain the elements of the proposed tort and was unable to do so. The pleadings must provide adequate notice of the offense for which relief is sought, not a moving target. When even the author of the complaint is unable to outline the elements of the tort proposed, any indulgence for a novel theory has reached its limit. The count will be dismissed.

*Battery*

■ The plaintiff's battery theory is a bit hard to follow. It appears to be something like this: The defendants successfully lulled the plaintiff into believing that smoking cigarettes would not be harmful. Had the plaintiff known the health risks of smoking, she never would have put a cigarette to her lips. The defendants' concealment of the truth about smoking, therefore, resulted in an intentional and harmful touching for which they should bear responsibility.

The defendants contend that no battery could possibly have occurred since the plaintiff bought and smoked the cigarettes herself without any coercion exerted on her by the defendants, and so to the extent there was any physical act that might conceivably define a battery, it was the plaintiff's own act of putting the cigarette to her lips. In response to this rather obvious point, the plaintiff, in her papers opposing defendants' motion, argues by analogy from medical malpractice law that her consent to the placement of cigarette to lips was not an informed consent, since the defendants' activities to suppress the information about smoking's risks left her in the dark. There is some ground for this argument in Massachusetts law. *See Commonwealth v. Stratton*, 114 Mass. 303 (1873) (defendant properly convicted of assault and battery for giving victim a snack he had surreptitiously laced with a drug).

But it is clear that an essential part of the plaintiff's battery theory is that she was misled by the defendants. In other words, crucial to this theory of battery is fraud; indeed, the battery claim is little more than an added gloss on the fraud claim. What was true for the explicit claim of fraud is true here as well: the fraudulent component of the plaintiff's theory of battery must be pled with the particularity required by Rule 9(b). It is not, and thus must fail.

### Violation of 93A

The plaintiff avers that she sustained injuries because of a conspiracy in which the defendants were participants. The conspiracy's object was to mislead the plaintiff and the public about the dangers and addictiveness of cigarettes, purportedly in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. As discussed above, pleadings of conspiracy to defraud or conceal must conform to the more stringent particularity requirements of Rule 9(b). *See Hayduk*, 775 F.2d at 443. These pleadings fail to do so, and thus the 93A Count shall be dismissed. There is no need to reach the defendants' arguments concerning retroactivity and preemption of 93A private rights of action.

### Conspiracy and Concert of Action

■ The plaintiff says that, at some point in the 1950s, the cigarette manufacturers named in the complaint agreed to suppress and conceal the "overwhelming" evidence of the deleterious effects of smoking. They also are said to have suppressed the development and production of safer cigarettes.

Massachusetts recognizes the tort of conspiracy in two forms. The first form, often denoted as "true conspiracy," occurs when the conspirators, acting in unison, exercise a "peculiar power of coercion" over the plaintiff that they would not have had if they had acted alone. *See Fleming v. Dane*, 304 Mass. 46, 22 N.E.2d 609, 611 (1939). The "peculiar power" conspiracy is rarely proven, *see id.*, and here it is inadequately pleaded. The plaintiff avers that each defendant, acting alone, would have been unable to mislead the public about the dangers of smoking, and that together they managed to prevent material information about the health risks of smoking from reaching the public or the plaintiff. Even if the allegations of fraudulent concealment passed muster under Rule 9(b), which they do not, the pleadings fail to explain how this conspiracy had a "coer-

cive" effect upon plaintiff. This is unlike the situation in *Aetna Casualty Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1563–64 (1st Cir.1994), where pleadings of concerted fraud by several auto repair shops and insurance adjusters were sufficient to state a claim for "peculiar power" conspiracy. There, the insurer was obligated to pay claims presented to it by the adjusters and the shops; their joint agreement to deceive the insurer circumvented the insurer's safeguards against fraud and triggered the insurer's contractual obligation to pay claims. In this sense, the joint fraud may be said to have coerced the insurer to pay claims it would otherwise not have had to. Here, nothing in the complaint asserts that the plaintiff was coerced into heeding the enticements, such as they may have been, of the tobacco companies. The only element of coercion in the pleadings is the assertion that the defendants inflicted an addiction upon the plaintiff. But that aspect of coercion, assuming that it did exist, is not a peculiar power attributable to the conspiracy. Any tobacco company acting alone could have accomplished it, once the plaintiff had smoked their cigarettes laced with addictive nicotine. That coercive effect, and whatever damages may have flowed from it, is properly addressed by the claim of battery.

The other form of conspiracy recognized in Massachusetts, and the one more congenial to the plaintiff's purpose, ascribes liability to those who substantially assist or encourage others to commit torts. *See Kyte v. Philip Morris Inc.*, 408 Mass. 162, 556 N.E.2d 1025, 1027 (1990). The plaintiff here alleges that the defendants conspired to retard the development of safer alternative cigarette designs. Because the pleadings of available alternative design fail to pass muster under the forgiving pleading requirements of Rule 8, this claim must fail also.

### RICO

■ The plaintiff also says that the aforementioned conspiracy among ciga-

rette manufacturers was a violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, and that the plaintiff consequently suffered adverse economic harm.

The only economic harms recounted in the complaint are the accumulated costs of purchasing cigarettes during plaintiff's many years of smoking. While these harms are certainly pecuniary, they are not the sort of economic harms actionable under RICO. They are instead harms that derive from personal injuries. *See Anderson v. R.J. Reynolds Tobacco Co.*, No. 99–11382, slip op. at 3–5 (D.Mass. Sept. 20, 1999); *Allman v. Philip Morris Inc.*, 865 F.Supp. 665, 667–68 (S.D.Cal. 1994). The RICO count must be dismissed.

### CONCLUSION

The complaint is DISMISSED. The plaintiff is granted leave to file an amended complaint within 35 days.

SO ORDERED.