**James H. ROBINSON, Plaintiff,**

v.

**Joseph BODOFF, Schechtman Levy & Halperin, Preston Halperin and Does 1 Through 10, Defendants.**

**No. CIV.A. 03–10633–NMG.**

United States District Court, D. Massachusetts.

Feb. 2, 2005.

David Berndt, Law Office of David Berndt, Norton, for James H. Robinson, Plaintiff, Pro Se.

Owen R. O'Neill, Howard, Timson White & O'Neill P.c., Norwood, for Joseph Bu-

doff, Does 1–10, Shechtman Levy & Halperin, Preston Halperin, Defendants.

Justin D. Park, Romero Montague P.S., Bellevue, WA, for James H. Robinson, Plaintiff, Pro Se.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the instant dispute, James H. Robinson ("Robinson") alleges that his former Attorneys, Joseph Bodoff ("Attorney Bodoff") and Preston Halperin ("Attorney Halperin"), and their law firm, Shechtman Levy & Halperin ("SLH") committed fraud and malpractice while representing him on several legal matters. Robinson now moves for partial summary judgment on the issue of liability for malpractice (Docket No. 16) and defendants move for summary judgment on all counts (Docket No. 23).

### I. *Factual Background*

In 1987, Robinson, together with John Leatham ("Leatham"), formed a corporation the purpose of which was to organize limited partnerships to purchase and operate low-income housing projects. In 1988, John Marbury Nelson IV ("Nelson") became a shareholder and the name of the company was changed to Robinson, Leatham and Nelson, Inc. ("RLN").

Before long, Robinson discovered that Nelson had been misappropriating RLN's trade secret information for his own use and had failed to transfer to the company $256,225 in fees that were owed to it. In 1990, RLN sued Nelson in United States District Court for the Northern District of California ("the California suit").

During protracted and contentious discovery, Robinson came to suspect that Nelson was attempting to conceal his assets in a number of trusts and other entities. Consequently, in 1995, Robinson filed suit against Nelson in Middlesex County Probate & Family Court, in Massachusetts, alleging fraudulent conveyance and seeking to avoid any such transfers ("the fraudulent conveyance suit"). *See* M.G.L.A. c. 109A § 8.

RLN was represented in the fraudulent conveyance suit by Attorney Joseph H. Walsh who obtained a temporary restraining order preventing Nelson from transferring any of his assets. On June 10, 1996, Nelson moved for summary judgment but that action was stayed pending the outcome of the California suit which was then on appeal.

On October 26, 1995, a jury in the California suit had found Nelson liable and judgment against him was entered for $292,008 together with prejudgment interest at a rate of 10% from January 22, 1990 through August 1, 1995 and post judgment interest at a lesser rate ("the California judgment"). Robinson appealed (with respect to several claims that had been dismissed) but the district court's judgment was affirmed in April, 1997.

In August, 1997, Robinson met with Attorney Bodoff, who was then employed by the law firm of Hinckley, Allen & Snyder, to discuss his possible representation of RLN in the fraudulent conveyance suit and with respect to attempts to collect the California judgment. Robinson signed and returned an engagement letter to Attorney Bodoff on December 22, 1997.

On February 24, 1998, Attorney Bodoff and his partner, Attorney Robert Sylvia, entered their appearances in the fraudulent conveyance suit. At the time, Nelson's summary judgment motion was pending and the parties disagree about when Attorney Bodoff first learned of it: Attorney Bodoff contends it was on February 24, 1998 but Robinson asserts that he told Attorney Bodoff about the pending motion during their initial, August, 1997 meeting.

Attorney Bodoff thereafter obtained Nelson's financial records from Robinson's California counsel. The records were sent to John Chuta ("Chuta"), a forensic accountant, for analysis. Chuta prepared a report in May, 1998 ("the Chuta Report"), allegedly finding inconsistencies between Nelson's tax returns and his personal financial statements.

In June 1998, Attorney Bodoff left the Hinckley law firm to join SLH and Robinson signed a new engagement letter. Attorney Preston Halperin ("Attorney Halperin") began assisting Attorney Bodoff with the representation at that time.

On July 2, 1998, the defendants propounded interrogatories to Nelson which Robinson alleges were deficient insofar as they did not utilize information provided by Chuta to ask specific questions about Nelson's alleged transfers of assets. Nelson, consistent with a history of recalcitrance, resisted the inquiries but his motions for protective orders were ultimately denied.

On November 17, 1998, Attorney Bodoff received notice that there would be a hearing on Nelson's motion for summary judgment on January 6, 1999. The day before that hearing, Attorney Bodoff and Attorney Halperin filed their opposition papers.

At the motion hearing, Nelson argued that Robinson's allegations were deficient because he had failed to identify any specific fraudulent transfer that had taken place. Defendants argued in response that they needed a continuance pursuant to Mass.R.Civ.P. 56(f) to conduct additional discovery and that Nelson's evasive behavior throughout discovery, combined with the precipitous decline in his net worth, raised trialable issues of fact as to whether he had concealed his assets through fraudulent transfers.

On January 21, 1999, the Probate Court allowed Nelson's motion for summary judgment, holding that 1) Robinson had failed to identify any specific fraudulent transfer and 2) additional discovery would not be permitted because Robinson (via his attorneys) had "failed to exercise diligence in pursuing discovery". Robinson alleges that the defendant-attorneys, in opposing summary judgment, disregarded and failed to cite information contained in the Chuta Report that would have defeated the motion.

Robinson discharged the defendant-attorneys and hired Attorney Tara Richardson. She appealed the grant of summary judgment and, while that appeal was pending, settled the case against Nelson for $250,000.

Robinson filed the instant malpractice action on April 7, 2003. The amended complaint states claims for breach of contract (Count I), fraud or misrepresentation (Count II), unfair or deceptive practices pursuant to M.G.L. c. 93A (Count III), legal malpractice (Count V) and civil conspiracy (Count VI).[1] On June 14, 2004, Robinson filed a motion for partial summary judgment on the issue of liability for legal malpractice. On the same day, defendants moved for summary judgment on all counts.

## II. Legal Analysis

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and

---

1. The complaint contains no "Count IV".

affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

Initially, plaintiff calls into question the admissibility of the supporting exhibits filed by defendants in connection with their motion for summary judgment. Those exhibits were submitted without an accompanying affidavit to authenticate them.

■ The law is well-established that "[d]ocuments supporting or opposing summary judgment must be properly authenticated". *Carmona v. Toledo,* 215 F.3d 124, 131 (1st Cir.2000) (citing Fed.R.Civ.P. Rule 56(c), (e)). The failure to authenti-

cate a document properly precludes its consideration on a motion for summary judgment. *Id.; Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 16 (1st Cir.1986). Unless an exhibit is self-authenticating pursuant to Fed.R.Evid. 902, the usual practice is to authenticate it through the affidavit of a witness who would be qualified to authenticate the exhibit at trial (although any acceptable means of authentication under Fed.R.Evid. 901 suffices).

In the instant case, Defendants' have filed 24 exhibits in support of their motion for summary judgment but have made no attempt to authenticate them. None of the exhibits is self-authenticating. *See* Fed.R.Evid. 902. Thus, only Exhibit 1 (copy of the complaint), Exhibit 7 (deposition of Robinson) and Exhibit 23 (affidavit of Attorney Halperin) may be considered. Fed.R.Civ.P. 56(c). The other exhibits will be stricken.

Notwithstanding its ruling, the Court will examine the merits of defendants' motion to the extent that it is supported by properly submitted evidence. *See* Fed. R.Civ.P. 56(c) (stating that a motion for summary judgment may be supported by "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits"). The Court considers the parties motions as pertaining to each count of the complaint.

#### 1. *Legal Malpractice*

■ The elements of a legal malpractice claim that plaintiff must prove are that 1) the attorney owed a duty to the plaintiff, 2) the attorney breached that duty by failing to use reasonable care, 3) the plaintiff suffered actual loss and 4) the breach proximately caused that loss. *Fiduciary Trust Co. v. Bingham, Dana & Gould,* 58 Mass.App.Ct. 245, 789 N.E.2d 171, 176 (2003). The causation element necessi-

tates what has been described as a "trial within a trial" because:

> [a] client in a [legal] malpractice action ... must show that, but for the attorney's failure, the client probably would have been successful in the prosecution of the litigation giving rise to the malpractice claim.

*Frullo v. Landenberger,* 61 Mass.App.Ct. 814, 814 N.E.2d 1105, 1109–10 (2004).

The parties' memoranda are addressed primarily to Count V (legal malpractice) and, more specifically, to the element of causation. Although each party claims that it is entitled to judgment as a matter of law, their memoranda, in fact, aptly demonstrate that numerous genuine issues of material fact remain to be resolved.

■ There is a genuine issue of material fact as to whether the defendants' conduct proximately caused damage to the plaintiff because it remains unclear whether plaintiff's fraudulent conveyance action could have succeeded. On the one hand, construing the facts in a light most hospitable to plaintiff, a finder of fact could reasonably find that the case would have come out differently had the defendants engaged in more meaningful discovery. The Probate Court noted in its Memorandum and Order addressing summary judgment that the defendants had "failed to exercise diligence in pursuing discovery". A finder of fact could reasonably conclude that, had the defendant-attorneys been more diligent, they would have discovered a specific fraudulent conveyance made by Nelson.

Furthermore, apparently plaintiff's successor counsel was able to negotiate a settlement with Nelson simply by raising the specter of his deposition. Thus, regardless of whether evidence of a specific fraudulent conveyance would have been revealed by discovery, it is reasonable to conclude that the defendants may have enticed Nelson to settle if they had conducted discovery more competently. Pre-sumptively, Robinson would have obtained a more favorable settlement with Nelson if the parties had negotiated prior to the dismissal of the fraudulent conveyance suit.

Finally, there is a genuine issue of material fact as to whether the defendants' protracted delay in filing their opposition papers, taken alone, constitutes malpractice. Defendants learned of the motion at least 11 months before it was decided, yet they failed to file opposition papers until the day before the hearing. Therefore, Defendants are not entitled to summary judgment on the element of causation.

On the other hand, neither is the plaintiff entitled to summary judgment. Construing the facts in a light most hospitable to defendants, there is considerable doubt as to whether Nelson, in fact, made fraudulent conveyances and whether Chuta's Report could have led the defendant-attorneys to discover such transactions. The precipitous decline in Nelson's net worth could have been caused by any number of occurrences, including the depression in the real estate market. Therefore, a reasonable finder of fact could conclude that Robinson would have lost the fraudulent conveyance suit regardless of what actions the defendants took. Accordingly, neither party is entitled to summary judgment on the issue of causation.

There is also a genuine issue of material fact with respect to whether plaintiff suffered any actual loss, the showing of which is entirely contingent upon Nelson's ability to pay any judgment or settlement. Defendants contend that Robinson suffered no actual loss because a judgment against Nelson would not have been "collectable" but the fact that Nelson eventually paid a $250,000 settlement severely erodes that argument. It is eminently clear that Robinson was owed more than $250,000 by Nelson but it remains to be proven how

much more, if any, may have been collected. Therefore, defendants' motion for summary judgment as to Count V will be denied.

## 2. *Breach of Contract*

Defendants' sole argument in support of summary judgment with respect to Count I (breach of contract) is that the plaintiff has not proven damages because there is, allegedly, no proof that Nelson could have paid more than $250,000. As discussed above, however, there remains a genuine issue of material fact as to whether enforcement pursuant to M.G.L.A. c. 109A would have enabled Robinson to collect a larger sum from Nelson by avoiding any fraudulent transactions. Thus, summary judgment will be denied as to Count I.

## 3. *Fraud or Misrepresentation*

Count II of the complaint states what purports to be a single cause of action for "fraud, misrepresentation, nondisclosure and promise without intent to perform". To the extent that such a statement passes muster under Fed.R.Civ.P. 8, the Court construes a claim for fraud or misrepresentation.

The elements of common law fraud are 1) a false representation of a material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing plaintiffs to act thereon, and 4) that plaintiffs relied upon the representation as true and acted upon it to their detriment. *Livingstone Flomeh–Mawutor v. Banknorth, N.A.,* 350 F.Supp.2d 314, 317 (D.Mass. 2004). The elements of common law misrepresentation are analogous except that the second element (knowledge of falsity) is satisfied by a showing that the defendants made a statement with reckless disregard for its truth. *Lerra v. Monsanto Co.,* 521 F.Supp. 1257, 1258 (D.Mass.1981).

In this case, plaintiff has offered no evidence that the defendants made a false statement of *material* fact nor has he demonstrated that any such statement was made recklessly or intentionally. Plaintiff cites several instances wherein defendant-attorneys allegedly did not adequately communicate or consult with Robinson but, even if those instances were proven, plaintiff would lack evidence that defendants possessed the requisite scienter. Allegations of poor communication and ignored requests sound in negligence, not fraud or misrepresentation. Therefore, Defendants' motion for summary judgment will be allowed as to Count II.

As an alternative ground for dismissal of Count II, the Court notes that plaintiff's allegation of fraud is deficient under Fed. R.Civ.P. 9(b) because it lacks the requisite particularity with respect to both the alleged fraudulent statement and the level of intent. *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (stating that, Fed. R.Civ.P. 9(b) is to be applied in cases where the underlying claim is one of common law fraud).

## 4. *Unfair or Deceptive Practice*

In Massachusetts, the Consumer Protection Act prohibits the use of unfair or deceptive practices. M.G.L.A. c. 93A § 2(a). Attorneys may be held liable under that statute. *Sears, Roebuck & Co. v. Goldstone & Sudalter,* 128 F.3d 10, 19 (1st Cir.1997). The law is firmly established, however, that "a violation of M.G.L.A. c. 93A requires, at the very least, more than a finding of mere negligence". *Darviris v. Petros,* 442 Mass. 274, 812 N.E.2d 1188, 1192 (2004).

For that reason, plaintiff's attempt to cast this case as one involving an "unfair or deceptive practice" is unavailing. Plaintiff misunderstands Massachusetts case law when he assails defendants' proposition that their alleged "failure to conduct themselves according to the standards of

the average competent attorney are not actionable under M.G.L.A. c. 93A". In fact, defendants statement of law is precisely correct because legal malpractice (i.e. the failure to conduct oneself in compliance with the standards of an average competent attorney) is a species of negligence, and negligence is not, per se, actionable under M.G.L.A. c. 93A. *Id.*

Plaintiff cites *Sears, Roebuck & Co. v. Goldstone & Sudalter,* 128 F.3d 10 (C.A.1 (Mass.)1997) for the proposition that "unethical conduct by an attorney can be a Chapter 93A violation". The facts of that case, however, are vastly different from this case because there an attorney had intentionally engaged in fraudulent billing practices. *Id.* at 19. The court in *Sears* specifically stated that only conduct which is "immoral, unethical, oppressive or unscrupulous" will give rise to a M.G.L.A. c. 93A violation. *Id.* The *Sears* case simply does not apply where the evidence supports, at best, a finding of negligence. Accordingly, the defendants are entitled to summary judgment as to Count III.

### 5. *Conspiracy*

Count VI of the complaint alleges a claim for "conspiracy/agency" but it is unclear exactly what cause of action the plaintiff means to invoke. To the extent that the plaintiff seeks to allege that the defendant law firm should be held vicariously liable pursuant to principles of agency, his claim is uncontroversial. To the extent that plaintiff attempts to state a cause of action for civil conspiracy, however, his pleading is inadequate. *See Wajda v. R.J. Reynolds Tobacco Co.,* 103 F.Supp.2d 29, 37 (D.Mass.2000) (setting forth the elements of civil conspiracy).

■ There are two forms of civil conspiracy in Massachusetts. *Id.* The first form, often called "true conspiracy", "occurs when the conspirators, acting in unison, exercise a peculiar power of coercion over the plaintiff that they would not have had if they had acted alone." *Id.* The second form, "ascribes liability to those who substantially assist or encourage others to commit torts." *Id.* Under either form, proof of intentional conduct (as opposed to negligence) is necessary. *See* Rest.2d. of Torts § 876.

■ In this case, neither form of conspiracy is supportable because the plaintiff does not allege (nor is there any evidence) that there was a common, intentional design among the defendants to provide Robinson with inadequate representation. Indeed, such an accusation would defy common sense. Accordingly, Count VI will be dismissed insofar as it alleges a claim of civil conspiracy.

### ORDER

In accordance with the foregoing:

1. Plaintiff's motion for partial summary judgment (Docket No. 16) is **DENIED**; and

2. Defendants' motion for summary judgment (Docket No. 23) is, with respect to Count II, Count III and Count VI, insofar as it attempts to state a cause of action for civil conspiracy, **ALLOWED**, and is otherwise, **DENIED**.

**So ordered.**