**METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**BOSTON REGIONAL PHYSICAL THERAPY, INC., et al., Defendants.**

**Civil Action No. 06–12059–NMG.**

United States District Court,
D. Massachusetts.

April 10, 2008.

Glenda H. Ganem, McGovern, Hug, Welch & Ganem, LLP, Clayton R. Henderson, Michael L. Snyder, McGovern & Ganem, P.C., Boston, MA, for Metropolitan Property and Casualty Insurance Company.

Donald J. Barry, Jr., Jeffrey T. Nichols, Business Law, P.C., Frank A. Smith, III, Frank A. Smith III & Associates, PC, Boston, MA, Molly Cochran, Seegel, Lipshutz & Wilchins PC, Wellesley, MA, Thomas J. Freda, Monahan & Padellaro, John D. Himmelstein, Law Office of John D. Himmelstein, Cambridge, MA, Robert P. Kelly, Lane, Lane & Kelly, Braintree, MA, Laurie A. McKeown, Jamaica Plain, MA, Joseph S. Provanzano, Provanzano Law Offices, Peabody, MA, for Boston Regional Physical Therapy, Inc., et al.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, Metropolitan Property and Casualty Insurance Company ("Metropolitan"), has brought this action against two business entities and several of their employees who are engaged in the business of providing and/or billing for physical therapy services. Presently before the Court is a motion of defendant Sapna Aggarwal

("Aggarwal") to dissolve or modify an ex parte attachment.

## I. *Background*

On November 13, 2006, Metropolitan filed a sealed complaint against defendants Boston Regional Physical Therapy ("BRPT") and Central Metropolitan Billing Services ("CMBS") and various employees of those entities including Aggarwal. Metropolitan claims that the defendants engaged in a fraudulent scheme designed to obtain insurance benefits from Metropolitan by billing for physical therapy services that were excessive, unwarranted or never rendered. On the same day the case was filed, Metropolitan sought ex parte and was granted approval of an attachment against all defendants in the amount of $1,389,000. A second amended complaint was filed on June 28, 2007 to which Aggarwal responded on August 8, 2008. In addition, a number of counterclaims, crossclaims and third party complaints have been filed.

On May 1, 2007, Aggarwal filed her first motion for order to release all attachments against her but at a May 30, 2007 hearing on the motion, counsel was not prepared to argue. On June 6, 2007, Aggarwal filed her second motion for release of all attachments. At the hearing on that second motion in the middle of July 2007, counsel for Aggarwal announced that new counsel had been retained and withdrew the motion at that time. In an order issued that day, United States Magistrate Judge Judith G. Dein stated:

If Dr. Aggarwal chooses to file another motion for the release of attachments, the plaintiff may request reimbursement of all expert witness fees that were incurred in connection with the preparation for and attendance at hearings on Dr. Aggarwal's first two motions for the release of attachments. The plaintiff may file an affidavit detailing those fees

in connection with their response to any motion filed by Dr. Aggarwal.

On November 27, 2007, Aggarwal filed her third motion to Modify Ex Parte Attachment. Metropolitan has opposed the motion and responded with a request for reimbursement.

## II. *Defendant's Motion to Modify Ex Parte Attachment (Docket No. 215)*

### A. Legal Standard For Attachment

■ Attachment is available "under the law of the state where the court is located". Fed.R.Civ.P. 64. In Massachusetts the seizure of property is governed by Mass. Gen. Laws ch. 223, §§ 42–83 (attachment) and ch. 246 (trustee process), which are implemented through Mass. R. Civ. P. 4.1 and 4.2. Attachment may be entered only:

upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover a judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment [or trustee process] over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

The central issue to be considered by the court is whether the plaintiff is "likely to prevail on the merits and obtain damages in the necessary amount." *Aetna Cas. and Sur. Co. v. Rodco Autobody*, 138 F.R.D. 328, 332 (D.Mass.1991) (citations omitted). The Massachusetts courts have not determined the exact evidentiary standard (e.g., clear and convincing or preponderance of the evidence) needed to determine "likelihood". *Sheehan v. Netversant–New England, Inc.*, 345 F.Supp.2d 130, 132 (D.Mass.2004).

In moving for an order or attachment, the plaintiff must submit affidavits setting forth "specific facts sufficient to warrant the required findings based upon the affi-

ant's own knowledge, information or belief." Mass. R. Civ. P. 4.1(c), (h). Mass. R. Civ. P. 4.1(g) and the counterpart Rule 4.2(h) govern dissolution of an attachment granted ex parte. The defendant must first introduce evidence by affidavit sufficient to challenge any finding in the ex parte order. *Rodco Autobody,* 138 F.R.D. at 332. Once the defendant provides the required evidence, the burden shifts to the plaintiff to justify the attachment as if it had not previously been granted. Where the record on Rule 4.2(h) motion reveals equally balanced contentions, the attachment must be dissolved.

## B. Legal Standard for Conspiracy

■ In Massachusetts, there are two distinct forms of conspiracy. The first, commonly referred to as "true conspiracy", "occurs when the conspirators, acting in unison, exercise 'a peculiar power of coercion' over the plaintiff that they would not have had if they acted alone." *Wajda v. R.J. Reynolds Tobacco Co.,* 103 F.Supp.2d 29, 37 (D.Mass.2000) (citing *Fleming v. Dane,* 304 Mass. 46, 22 N.E.2d 609 (1939)). Although a limited cause of action and rarely proven, a true conspiracy claim can be appropriate in situations where an insurer paid claims presented to it by the conspirators and the conspirators' joint agreement to deceive the insurer foiled the insurer's safeguards and triggered the insurer's obligation to pay the claims. *Wajda,* 103 F.Supp.2d at 37 (citing *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563–64 (1st Cir.1994)).

■ The second form of conspiracy recognized in Massachusetts is the tort-based civil conspiracy "more akin to a theory of common law joint liability in tort." *P & B Autobody,* 43 F.3d at 1564. For liability to attach with respect to the second form of conspiracy there must be an agreement between two or more people to do a wrongful act and proof of some tortious act in furtherance of the agreement. *Id.*

## C. Analysis

■ In her motion and supporting affidavits, Aggarwal does not contest the likelihood that Metropolitan will prevail on the merits of the case. Instead she argues that the majority of the allegedly unlawful conduct identified in the complaint did not involve her (and therefore she cannot be liable for it) and that Metropolitan has not shown a reasonable likelihood that it will recover a judgment equal or greater to the $1,389,000 that has been attached. Metropolitan argues that Aggarwal's affidavits are factually insufficient to challenge the Court's granting of pre-judgment attachments and that Aggarwal is liable for Metropolitan's damages under both of Metropolitan's conspiracy causes of action. As explained below, Aggarwal has failed to present affidavits sufficient to challenge the findings this Court implicitly made when it allowed the Motion for Approval of Attachment on Trustee Process.

### 1. Aggarwal's Portion of the Damages

Aggarwal's counsel submitted an affidavit with its motion analyzing Metropolitan's claims against Aggarwal. The analysis notes that Metropolitan accuses Aggarwal of less than 40% of the unlawful behavior attributed to the doctors at BRPT/CMBS. Aggarwal argues that because she is allegedly responsible for less than 40% of the unlawful conduct, Metropolitan cannot recover its full amount of damages from her. The affidavit is insufficient to challenge the Court's findings that Metropolitan has a reasonable likelihood of recovering $1,389,000 from Aggarwal because it ignores the likelihood that Metropolitan will prevail on its conspiracy claims, thereby causing Aggarwal to be jointly and severally re-

sponsible for the entire amount of Metropolitan's loss.

■ Aggarwal summarily dismisses Metropolitan's contention that she was part of a true conspiracy, apparently contending that a true conspiracy cannot apply in this case. A true conspiracy may lie in just this sort of action, however, where conspirators act together to coerce an insurer into paying fraudulent claims. *P & B Autobody,* 43 F.3d at 1563–64. Aggarwal also contends that the second kind of conspiracy does not apply in this case, at least with respect to her, because Metropolitan has not shown that Aggarwal knew a wrongful act was perpetrated. Aggarwal suggests that Metropolitan alleges that by merely working at Metropolitan, Aggarwal became a conspirator. Although it is true that Metropolitan must present specific evidence as to the fact that Aggarwal engaged in a conspiracy, that evidence may be circumstantial. Metropolitan has produced evidence that Aggarwal's coding practices were suspect and that Aggarwal, during her employment with Metropolitan, was the only doctor and that new patients were screened by the doctor at the outset. Without evidence negating these three facts, Aggarwal fails to challenge this Court's implicit finding that Metropolitan will succeed on the merits with respect to the entirety of the damages Metropolitan suffered as a result of the defendants' alleged fraudulent scheme. Moreover, a person may be held responsible for the entire conspiracy although that person has had a comparatively small part in it and even if the person joined the conspiracy after it was well underway. *Potter Press v. C.W. Potter, Inc.,* 303 Mass. 485, 492, 22 N.E.2d 68 (1939).

## 2. Total Damages Calculation

Aggarwal also contends that Metropolitan "brazenly continues to hide behind its superficial, sweeping and conclusory claim" with respect to the damages calculation. The affidavits submitted in support of her motion to modify the attachment, however, introduce no new information to contest Metropolitan's calculation of damages. Although Aggarwal argues that Metropolitan has failed to breakdown the computation of damages by year, Metropolitan need not provide such a detailed analysis at this stage where it claims that the defendants acted together in a conspiracy and that therefore all defendants are responsible for the entirety of the unlawful conduct. In the affidavit submitted in support of its Motion for Approval of Trustee Process, John P. Dalone, the Senior Investigator assigned to the Special Operations Division of Metropolitan's Special Investigations Unit, explains the source of the damages calculation. He contends that between 2001 and the present, Metropolitan paid at least $840,000 in personal injury policy benefits to BRPT/CMBS, at least $715,000 in Bodily Injury and Uninsured Motorist benefits to BRPT/CMBS, at least $241,038 in subrogation payments to other automobile insurance carriers and at least $94,000 in attorneys' fees, costs and expenses in bringing this action as well as investigating the defendants' behavior. The total amount of those damages less the $502,000 that Metropolitan has received in subrogation payments equals the $1,389,000 that Metropolitan has attached. All of those damages allegedly arise from a scheme perpetrated by the defendants and Metropolitan has provided sufficient information to identify Aggarwal as part of that scheme.

Aggarwal's strongest argument is that Metropolitan appears to seek reimbursement for all questioned sums rather than the difference between the allegedly excessive bill and what the bill should have been. Aggarwal does not, however, offer any information about how Metropolitan should calculate a more accurate amount of

damages. The bills submitted to Metropolitan included false medical information, making it impossible for Metropolitan to determine how much the charges should have been. Aggarwal has not presented any evidence regarding what portion, if any, of the invoices were legitimate, and, therefore, attachment for the entire amount of the fraudulent invoices is appropriate.

Because Aggarwal has failed sufficiently to challenge the implicit findings made by this Court when it allowed the attachment, Aggarwal's motion to modify that attachment will be denied without prejudice. If and when Aggarwal presents evidence (as opposed to analysis) sufficient to challenge the merits of Metropolitan's claim or to substantiate a lower damages computation, she may renew her motion to modify the attachment.

### III. *Plaintiff's Request for Reimbursement (Docket No. 222)*

After Aggarwal withdrew her motion to modify the attachment for the second time, Magistrate Judge Dein allowed Metropolitan to request reimbursement for attorney's fees in connection with preparing for and attending hearings on the motions. Metropolitan has requested reimbursement for those fees. As Aggarwal points out, however, it is not clear what Metropolitan's expert did in connection with those motions. Metropolitan never submitted an affidavit or testimony from an expert and Metropolitan fails to identify the services rendered by the expert in preparing for the motion. Consequently, this Court will deny Metropolitan's request for reimbursement for expert fees.

### ORDER

In accordance with the foregoing, Defendant's Motion to Dissolve or Modify Ex Parte Attachment (Docket No. 215) is **DENIED WITHOUT PREJUDICE** and Plaintiff's Opposition re Motion to Modify, which is construed as a Motion for Reimbursement (Docket No. 222), is **DENIED**.

**So ordered.**