12-1662-cv
*Taveras v. UBS AG et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

August Term, 2012

(Argued: November 15, 2012                    Decided: February 27, 2013)

Docket No. 12-1662

———————————

DEBRA TAVERAS, on behalf of herself and all others similarly situated, MARY MCKEVITT,

*Plaintiffs-Appellants*,

BRIAN LUDLUM, BRIAN STANISLAUS,

*Consolidated Plaintiffs-Appellants*,

– v. –

UBS AG, PETER KURER, STEPHAN HAERINGER, SERGIO MARCHIONNE, ERNESTO BERTARELLI, GABRIELLE KAUFMANN-KOHLER, ROLF A. MEYER, HELMUT PANKE, DAVID SIDWELL, PETER SPUHLER, PETER VOSER, LAWRENCE A. WEINBACH, JOERG WOLLE, PETER A. WUFFI, CLIVE STANDISH, DAVID S. MARTIN, EDWARD O'DOWD, BARBARA AMONE, PER DYRVIK, THE RETIREMENT BOARD AND SAVINGS PLAN COMMITTEE, JOHN DOES 1-30, UBS BOARD OF DIRECTORS, EXECUTIVE BOARD OF UBS AG, JOE SCOBY, ROBERT WOLF, MARTEN HOEKSTRA, RAOUL WEIL, STEPHEN BAIRD, SIMON CANNING, MICHAEL DALY, RICHARD DURON, URSULA MILLS, JAIME TAICHER, UBS AMERICAS, INC., UBS FINANCIAL SERVICES, INC., UBFS BOARD OF DIRECTORS, DIANNE FRIMMEL, JOHN HANNASCH, ROBERT CHERSI, MICHAEL WEISBERG, EXECUTIVE COMMITTEE OF UBS FINANCIAL SERVICES INC., UBS FINANCIAL SERVICES, INC. INVESTMENT COMMITTEE, KEN CASTANELLA, EARLE DODD, MARILEE FERONE, WILLIAM FREY, MATTHEW LEVITAN, ED O'CONNOR, KEVIN RUTH, RHONDA VIAPIANO,

*Defendants-Appellees*,

UBS AG, FINANCIAL SERVICES, INC., BENEFITS ADMINISTRATIVE COMMITTEE OF THE UBS FINANCIAL SERVICES INC. 401 K PLUS PLAN, ROBERT MCCORMICK, JOHN AND JANE DOES 1-20,

*Consolidated Defendants-Appellees.*

———————————

Before: KEARSE, STRAUB, and POOLER, *Circuit Judges*.

_____

An appeal from a final judgment and a postjudgment order of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*), granting defendants' motion to dismiss in full, and denying plaintiffs' motion to alter or amend the judgment and for leave to file an amended complaint.

After examining the terms in the documents pertaining to the two retirement savings plans at issue, we hold that the District Court erred in applying the presumption of prudence as to one of the two plans, the Savings and Investment Plan, as that plan did not require or strongly encourage investment in UBS stock or the UBS Stock Fund. We hold that the District Court did not err, however, in applying the presumption of prudence as to the other plan at issue, the Plus Plan.

Accordingly, the dismissal order of the District Court is **AFFIRMED** in part, **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this opinion.

_____

MARK C. RIFKIN, (Michael Jaffe, Beth A. Landes, *on the brief*) Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, Thomas J. McKenna, Gregory M. Egleston, Gainley & McKenna, New York, NY, Todd S. Collins, Ellen T. Noteware, Berger & Montague, P.C., Philadelphia, PA, Jeffrey A. Klafter, Klafter Olsen & Lesser LLP, White Plains, NY, *for Plaintiffs-Appellants*.

ROBERT J. GIUFFRA, JR. (Suhana S. Han, Matthew A. Schwartz, Thomas C. White, *on the brief*) Sullivan & Cromwell LLP, New York, NY, *for Defendants-Appellees*.

_____

STRAUB, *Circuit Judge*:

Plaintiffs-Appellants, four former employees of UBS AG and/or UBS Financial Services, Inc., appeal from a final judgment and a postjudgment order of the District Court for the Southern District of New York (Richard J. Sullivan, *Judge*), the first granting defendants' motion to dismiss in its entirety, and the second denying plaintiffs' motion to alter or amend the judgment and for leave to file a Second Consolidated Amended Complaint ("SCAC").

On appeal, plaintiffs argue that the District Court erred in analyzing their claim for breach of the duty of prudence, as it applied a presumption of prudence to the fiduciaries of both investment plans. Defendants, the alleged fiduciaries of these two plans, in which plaintiffs invested for retirement, offered the UBS Stock Fund as an investment option to plan participants and assert that they are entitled to the presumption of prudence, which the District Court applied. For the reasons that follow, we hold that the District Court wrongly applied the presumption as to one of the two plans, the Savings and Investment Plan ("SIP"), as the SIP Plan Document neither requires nor strongly encourages investment in UBS stock or the UBS Stock Fund. We hold, however, that the District Court correctly applied the presumption of prudence as to the second plan, the Plus Plan, which requires plan fiduciaries to invest in the UBS Stock Fund. Accordingly, we **AFFIRM** the dismissal order of the District Court in part, **VACATE** in part, and **REMAND** the case for further proceedings consistent with this opinion. Plaintiffs' remaining arguments on appeal are addressed in a companion Summary Order, filed today.

## BACKGROUND

**I. Parties and Investment Plans**

Plaintiffs-Appellants Debra Taveras, Mary McKevitt, Brian Ludlum, and Brian Stanislaus are four former employees of defendants UBS AG ("UBS") and/or UBS Financial Services ("UBSFS"). They brought a putative class action on behalf of current and former employees of UBS and UBSFS, alleging that Defendants-Appellees violated various fiduciary duties imposed on them by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.

3

During the class period[1] alleged, plaintiffs participated in either the SIP or the UBSFS 401(k) Plus Plan ("Plus Plan") in order to save for their retirement. Both the SIP and the Plus Plan are tax-qualified retirement savings plans under which participants hold individual accounts that reflect both the amount contributed as well as the gains and losses on a participant's account investments. *See* 29 U.S.C. § 1002(2)(A), (3), (34). It is uncontested that both plans are "eligible individual account plans" ("EIAPs") as defined by ERISA. *See id.* § 1107(b)(1), (b)(3), (d)(3).[2] Participants in either plan have the ability to contribute funds from their salaries and to determine how to allocate and invest those funds among the various available investment options selected by certain of the defendants.

The UBS Stock Fund was an available investment option under both plans during the class period. The SIP Investment Committee, a named defendant, has discretion to add or delete authorized investment funds available to employees participating in the SIP, including the

---

[1] The operative class period is that alleged in the Second Consolidated Amended Complaint ("SCAC"), March 17, 2008–October 16, 2008. For an explanation of why this period governs, see our companion Summary Order, filed today.

[2] EIAPs are defined in 29 U.S.C. § 1107(d)(3) as follows:

> [A]n individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan ["ESOP"]; or (iii) a money purchase plan which was in existence on September 2, 1974, and which on such date invested primarily in qualifying employer securities. Such term excludes an individual retirement account or annuity described in section 408 of Title 26. . . . Notwithstanding [i–iii], a plan shall be treated as an eligible individual account plan with respect to the acquisition or holding of qualifying employer real property or qualifying employer securities only if such plan *explicitly provides for acquisition and holding of qualifying employer securities* or qualifying employer real property . . . .

29 U.S.C. § 1107(d)(3) (emphasis added). ESOPs are therefore a kind of EIAP, as are other profit-sharing, stock bonus, thrift or savings plans. *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1094 (9th Cir. 2004). In general, ERISA plans are not permitted to invest more than ten percent of their assets in the sponsoring employer's securities or real property. 29 U.S.C. § 1107(a). EIAPs are exempt from this requirement. *Id.* § 1107(b)(1). Courts have noted accordingly that EIAPs seek to promote, among other things, "investment in employer securities," and therefore "are subject to many of the same exceptions [including the duty to diversify and prohibitions against self-dealing] that apply to ESOPs" in particular. *Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007); *see also* 29 U.S.C. § 1104(a)(2) (exempting all EIAPs from duty to diversify in certain instances); *Id.* § 1108(e)(3)(A) (exempting all EIAPs from prohibition against self-dealing in certain instances).

4

UBS Stock Fund, which "tracked the performance of the underlying common stock of UBS." (JA-600.)   The SIP Plan Document tasks the SIP Investment Committee with the general responsibility to "instruct and advise the Trustee and the Members [of the SIP] as to the addition or deletion of an authorized Investment Fund."   (JA 914, § 9.2.)

The Plus Plan Investment Committee, another named defendant, is permitted to add or delete any investment fund authorized by the Plus Plan as an investment option, including the UBS Stock Fund.   The UBS Stock Fund, however, is identified in the Plus Plan Summary Plan Description as one of the "Core Tier" funds, and the Plus Plan Plan Document states that the Plus Plan Investment Committee "shall" provide it as an investment option under the plan. (JA-1086; JA-992.)

Both the SIP and the Plus Plan sustained significant losses due to individual plan participants' accounts' investment in the UBS Stock Fund.   UBS stock fell some seventy-four percent between April 26, 2007, when it reached a twelve-month high, and the last day of the class period, October 16, 2008.   It is these losses that provide the foundation for plaintiffs' claims that defendants breached their various fiduciary duties under ERISA.

Defendants are alleged fiduciaries of the plans and include UBS, UBSFS, UBS Americas, Inc. ("UBSA"),[3] the members of UBS's Executive Board, the members of UBSFS's Executive Committee, UBSFS's Board of Directors, members of the SIP Investment Committee, members of the Plus Plan's Benefits Administration Committee ("Plus Plan Administration Committee"), and the members of the Plus Plan's Investment Committee.

**II.   Allegations of the Second Consolidated Amended Complaint**

Plaintiffs' allegations arise principally out of two decisions UBS made in the years

---

[3]   UBSFS is a wholly owned subsidiary of UBSA, which is, in turn, a wholly owned subsidiary of UBS.

leading up to and including the class period. The first is UBS's decision to invest in, and its subsequent exposure to the risks of, more than $100 billion in subprime mortgage backed securities and other fixed income assets. UBS's decision to make these investments, often in contravention of its own stated risk policies, has been the subject of an SEC investigation, a Swiss Federal Banking Commission investigation, and a Shareholder Report issued by UBS.[4] The second related decision is the approximately $43 billion of write-downs in assets that UBS undertook between October 30, 2007, and August 12, 2008.

As a result of these write-downs, which are alleged to be due in large part to UBS's risky subprime investments, plaintiffs allege that UBS found itself on the "[b]rink of [c]ollapse" in 2008. (JA-653.) Based on these write-downs and UBS's reported assets, plaintiffs allege that UBS was insolvent, and as such, the Swiss government had to "bail out" UBS by taking on "a $60 billion portfolio of illiquid and highly risky assets" from the company "that had little or no real value." (JA-658.)

Plaintiffs accordingly filed suit on behalf of themselves and all others similarly situated, alleging that, during the relevant class period, defendants breached their fiduciary duties under ERISA by (1) imprudently continuing to offer participants in both the Plus Plan and the SIP the option to invest in the UBS Stock Fund because UBS stock and the UBS Stock Fund were adversely affected by, *inter alia*, UBS's investments in risky subprime mortgage backed securities and other fixed income assets ("Count 1"); (2) making misstatements or omissions

---

[4] A summary of the UBS shareholder report is publically available. *See* SHAREHOLDER REPORT ON UBS'S WRITE-DOWNS (2008), *available at* http://www.static-ubs.com/global/en/about_ubs/investor_relations/agm/2008/agm2008/invagenda/_jcr_content/par/linklist_9512/link.277481787.file/bGluay9wYXRoPS9jb250ZW50L2RhdS91YnMvZ2xvYmFsL2Fib3V0X3Vicy9pbnZlc3Rvcl9yZWxhdGlvbnMvMTQwMzMzXzA4MDQxOFNoYXJlaG9sZGVyUmVwb3J0LnBkZg==/140333_080418ShareholderReport.pdf. UBS prepared this summary for the public but provided the Swiss Federal Banking Commission with a longer 400-page report, which has not been made publicly available.

regarding UBS's true financial condition in breach of their duty of candor ("Count 2"); (3) failing to adequately monitor other fiduciaries, for co-fiduciary liability, and quantum meruit ("Counts 3, 5, and 6" or "secondary liability claims"); and (4) engaging in wrongful conflicts of interest ("Count 4").

**III. Procedural Background**

Three separate ERISA actions were brought against UBS in the Southern District of New York beginning in July 2008. After these actions were consolidated, plaintiffs filed a consolidated complaint, followed in November 2008 by the Consolidated Amended Complaint ("AC"). After receiving notification that defendants were seeking leave to file a motion to dismiss the AC, plaintiffs elected to stand on the allegations of that complaint. Defendants moved to dismiss on January 16, 2009, but the District Court stayed disposition of the motion until certain issues in a related action were resolved.

**A. Motion to Dismiss**

The District Court granted defendants' motion to dismiss the AC in its entirety in an opinion dated March 24, 2011, and entered final judgment on March 27, 2011. *See In re UBS AG ERISA Litig.*, No. 08 Civ. 6696, 2011 WL 1344734 (S.D.N.Y. Mar. 24, 2011).

It dismissed Count 1, plaintiffs' duty of prudence claim, reasoning that because the Plus Plan required that investors be offered the option of investing in the UBS Stock Fund, and the SIP "strongly encourage[d]" defendants to offer the option to invest in the UBS Stock Fund, defendants were entitled to a presumption of prudence in accordance with *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995). *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *4-5. Thus, the District Court reviewed defendants' decisions to continue offering the UBS Stock Fund as an investment option under either plan for an abuse of discretion. *Id.* at *6. It held that the

7

decline of UBS's share price, alleged to be approximately seventy-four percent,[5] was insufficient to overcome the presumption of prudence, and that there were no other allegations "making it plausible that UBS's solvency or viability as a going concern was ever realistically in jeopardy" or otherwise setting forth a sufficiently "dire" situation. *Id.* at *8. The District Court held also that, even if the allegations of the complaint could be viewed as establishing sufficiently dire circumstances for the company, there were no allegations that those circumstances "appeared imminent to Defendants." *Id.*

As to Count 2, plaintiffs' duty of candor claim, the District Court held that defendants did not have any duty to "disclose to plan participants material information relating to the company's financial condition," and that the alleged misstatements were made when defendants were acting in their corporate fiduciary, rather than ERISA fiduciary, capacity. *Id.* at *9. Additionally, the District Court noted it believed this claim was not pled with the requisite degree of "specificity." *Id.* at *10. It therefore dismissed Count 2.

The remaining counts, those alleging that defendants had breached their duties of care and loyalty by failing to avoid conflicts of interest and for secondary liability, were also dismissed. The court determined that they were nothing more than a "rehashing of [the other dismissed] claims" and thus failed as well. *Id.* at *11.

**B. Motion to Alter or Amend the Judgment**

On April 20, 2011, plaintiffs filed a motion to alter or amend the judgment and requested leave to file the proposed SCAC. The District Court denied this motion on March 23, 2012, in part because all of the additional allegations in the SCAC could have been raised "prior to the

---

[5] As the District Court noted in its order, plaintiffs "revised their figures" in their brief opposing defendants' motion to dismiss the AC to "allege that UBS's stock price fell 69%." *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *2, n.5. The AC and the SCAC both allege, however, that the stock price fell seventy-four percent.

8

entry of judgment" (many, even prior to the end of briefing on the motion to dismiss), and the motion was therefore untimely. *In re UBS AG ERISA Litig.*, No. 08 Civ. 6696, 2012 WL 1034445, at *4 (S.D.N.Y. Mar. 23, 2012). In deciding plaintiffs' motion to alter or amend the judgment, the District Court also considered the merits of the allegations in the SCAC, determining that "although Plaintiffs' proposed SCAC contains dozens of amendments, they would not alter the Court's conclusion that neither the presumption of prudence was overcome nor the duty of candor violated." *Id.* at *7. Thus, the District Court concluded that the additional allegations contained in the SCAC could not cure the deficiencies which had led to dismissal previously, and so the proposed amendment was futile in any event. *Id.* at *7-8.

**DISCUSSION**

**I. Presumption of Prudence**

**A. Standard of Review**

As with any review of a Rule 12(b)(6) motion to dismiss, the District Court's determination that the *Moench* presumption of prudence applies to the fiduciaries of the two plans is reviewed *de novo*. *See, e.g.*, *Maloney v. Soc. Sec. Admin.*, 517 F.3d 70, 74 (2d Cir. 2008) (per curiam). We accept as true the facts alleged in the AC,[6] and may consider documents it incorporates by reference, as well as documents upon which it "relies heavily," in deciding this appeal. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[6] For an explanation of why the facts alleged in the AC, with the exception of the class period alleged in the SCAC, govern this Opinion, see our companion Summary Order, filed today.

**B. The *Moench* Presumption**

All ERISA fiduciaries are required to act in accordance with, *inter alia*, the duty of prudence, which requires those fiduciaries to make reasonable investment and managerial decisions on behalf of the ERISA plan they are overseeing, such that a "prudent man acting in a like capacity and familiar with such matters would use" similar "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1). In *In re Citigroup ERISA Litig.*, 662 F.3d 128, 138 (2d Cir. 2011), we adopted a "presumption of prudence" that applies to fiduciaries of certain plans who invest the plan they are overseeing, or offer participants the option to invest their individual accounts, in the employer's stock. *See also Gearren v. McGraw-Hill Cos.*, 660 F.3d 605, 610 (2d Cir. 2011) ("*Gearren II*") (same). The presumption dictates that, where applicable, a fiduciary's decision to invest an employer's retirement plan in the employer's own stock — or to offer plan participants the option to so invest — is a presumptively prudent decision in compliance with ERISA, and thus the decision to invest in the employer's stock is reviewed only for an abuse of discretion. *In re Citigroup ERISA Litig.*, 662 F.3d at 138-40. An ERISA fiduciary appropriately may be found to have exceeded this discretion only where she knew or should have known that the employer, and therefore its stock, was in a "dire situation." *Id.* at 140 (internal quotation marks omitted).

The *Moench* presumption was created in consideration of the fact that while Employee Stock Ownership Plans ("ESOPs"), "unlike pension plans, are not intended to guarantee retirement benefits," such ESOP fiduciaries still "must act in accordance with the [applicable] duties of loyalty and care." *Moench*, 62 F.3d at 568-69. Thus, the Third Circuit decided that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Id.* at 571. We have subsequently

10

held that the presumption applies not only to ESOPs, but also to certain EIAPs, the kind of plan at issue in this case. *See In re Citigroup ERISA Litig.*, 662 F.3d at 138 (adopting presumption, where applicable, "with respect to both EIAPs and ESOPs").

We have stated, however, that it is not merely investment in employer stock that entitles a defendant to a presumption of prudence. Rather, "judicial scrutiny should increase with the degree of discretion a plan gives its fiduciaries to invest. Thus, a fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require — rather than merely permit — investment in company stock." *Id.* (citation omitted); *accord Moench*, 62 F.3d at 571 (indicating presumption does not apply where the fiduciary is "simply permitted to make" investments in an employer's securities, but only where "the fiduciary presumptively is required to invest in employer securities").

**C. Presumption of Prudence in the Instant Case**

The District Court found that both the SIP and the Plus Plan sufficiently mandated or encouraged their fiduciaries to provide plan investors the option to invest in the UBS Stock Fund so as to trigger the presumption of prudence. *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *4-6. Because each plan document sets forth different language regarding whether the UBS Stock Fund was to be offered as an investment option, we examine each in turn.

**i. Plus Plan**

Section 1.2 of the Plus Plan Plan Document states that the "purpose" of the plan is to "attract and retain qualified individuals by providing them with an opportunity to accumulate assets for their retirement and to acquire [UBS] Common Stock." (JA 990, § 1.2.) Section 11.2(a) of the same document states that "[t]he Trustee shall invest and reinvest all amounts in each Participant's Accounts . . . from among the Investment Funds made available by the

11

Investment Committee . . . one of which *shall* be the [UBS] Common Stock Fund." (JA 992, § 11.2 (emphasis added).) The Investment Committee is allowed to "add[ ] or delete[ ]" any of the available investment funds, presumably including the UBS Stock Fund, "from time to time." (*Id.*)

This language mirrors the language of the plan document at issue in *Gearren*. There, the plan document provided that the "Plan shall offer (a) the 'Stock Fund' which will be invested primarily in Common Stock of the Corporation." *Gearren v. McGraw-Hill*, 690 F. Supp. 2d 254, 262 (S.D.N.Y. 2010) ("*Gearren I*"). The plan document at issue in *Gearren* provided also that "[t]he Pension Investment Committee is authorized to terminate the existing Funds," including the employer's own stock fund. Brief for Plaintiffs-Appellants at 8-9, *Gearren v. McGraw-Hill*, 660 F.3d 605 (2d Cir. 2011) (No. 10-792-cv).

As in *Gearren,* the relevant sections of the Plus Plan Plan Document require, at least initially, that the UBS Stock Plan be offered as an investment option. The Plan Document does provide the Plus Plan Investment Committee a means by which to terminate the company's fund as an investment option if it so chooses. But the ability to remove the company's fund from those funds available to plan investors existed also in *Gearren*, where we applied the presumption of prudence.[7] *See Gearren II*, 660 F.3d at 610.

As the District Court held, "[b]ecause the Plus Plan [Plan Document] clearly and explicitly limits the trustee's discretion by requiring that the UBS Stock Fund be offered as an investment option, the Plus Plan fiduciaries are entitled to a presumption of prudence." *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *5. We agree that the Plus Plan Plan Document

---

[7] As the District Court deciding *Gearren I* reasoned, the "plain language of the plan agreements thus states that the Committee must offer the Stock Fund . . . . [and] commanded the actions at issue." 690 F. Supp. 2d at 263-64.

required the plan's fiduciaries to offer the UBS Stock Fund and, therefore, affirm the District Court's holding that the fiduciaries of the Plus Plan are entitled to the presumption of prudence in reviewing their decision to offer the UBS Stock Fund as an investment option.

### ii. SIP

Unlike the Plus Plan, the SIP Plan Document contains no language mandating that the UBS Stock Fund "shall" be offered as an option to investors in the plan. The SIP Plan Document, however, does include several mentions of the UBS Stock Fund.

Section 2.1 of the SIP Plan Document lists and defines the "UBS Stock Fund" as among the relevant terms in the plan documentation. It offers the following definition of the UBS Stock Fund: "[T]he portion of the Plan and the Trust Fund invested in UBS Shares . . . includ[ing] such other assets as the Trustee may deem appropriate while assets are awaiting investment in UBS Shares." (JA 872, § 2.1(ll).)

Section 9.2 of the SIP Plan Document states that "the [SIP Investment] Committee may . . . from time to time eliminate any current Investment Fund and/or designate other Investment Funds to be available for the investment of the funds credited to the Accounts of Members under the Plan." (JA-914, § 9.2.) Notably, the UBS Stock Fund is not mentioned by name in this section. Presumably, however, it is an "Investment Fund" that the SIP Investment Committee could add or delete from the Plan in accordance with section 9.2.

Section 9.7 is entitled "UBS Shares," and describes, *inter alia*, the manner in which dividends from the UBS Stock Fund are to be reinvested subsequent to the Investment Committee's decision to add the Fund as an investment option under the plan as of April 2, 2001, as well as how voting rights for UBS stock are to be administered to plan participants.

13

The District Court determined that these references to the UBS Stock Fund, the only fund mentioned by name in the SIP Plan Document, sufficiently established that the UBS Stock Fund was a "strongly encouraged" investment option so as to entitle the SIP fiduciaries to the presumption of prudence. It reasoned that "[S]ection 9.2 [, allowing for the addition or deletion of any Investment Fund,] does not undermine the conclusion that . . . the settlor intended to strongly encourage a fiduciary to . . . facilitate employee ownership of employer stock," and "[a]s such, the provisions of the SIP Document provide sufficient evidence of the settlor's clear intent that the Stock Fund be offered as an investment option." *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *5 (citations and internal quotations omitted).

We are not similarly persuaded that the aforementioned passages from the SIP Plan Document amount to strong encouragement. The SIP, unlike the Plus Plan and the plans in *Gearren* and *Citigroup*, does not in any way require or encourage its fiduciaries to offer the UBS Stock Fund as an investment option to plan participants, as opposed to any other available investment fund. *See In re Citigroup ERISA Litig.*, 662 F.3d at 138 ("[A] fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require—rather than merely permit—investment in company stock."). The SIP Plan Document simply lists the UBS Stock Fund as one potential investment option, and notes that the Investment Committee ultimately did, in 2001, decide to offer the fund as an investment option to plan participants. That the SIP Plan Document also describes particular ways that dividends and voting rights accruing from the UBS Stock Fund should be distributed to plan participants does not change our conclusion. These subsections are relevant only if the Investment Committee has already made the entirely discretionary decision to add the fund as an option in the first instance.

14

EIAPs, of which the SIP is one, have an ERISA-recognized interest in "encourag[ing] . . . employee ownership [of the employer's stock] through the special status provided to . . . eligible individual account plans." *In re Citigroup ERISA Litig.*, 662 F.3d at 136. In light of this goal, it is likely that many EIAPs will, when possible, provide their fiduciaries a discretionary means by which to offer plan participants the ability to invest in the employer's stock. If the presumption of prudence was triggered in every instance where the EIAP plan document, as here, simply (1) named and defined the employer's stock in the plan document's terms, and (2) allowed for the employer's stock to be offered by the plan's fiduciaries on a discretionary basis to plan participants, then we are hard pressed to imagine that there exists *any* EIAP that merely offered the option to participants to invest in their employer's stock whose fiduciaries would not be entitled to the presumption of prudence.

Such an outcome contravenes our reasoning in *In re Citigroup ERISA Litig.* and *Gearren II*, and the reasoning employed by the Third Circuit in creating the presumption of prudence in the first instance. The presumption of prudence was applied in those cases to address the "tension" between "the competing ERISA values of protecting retirement assets and encouraging investment in employer stock" that exists primarily in instances where a fiduciary has an "explicit obligation to act in accordance with plan provisions" by offering employer stock to participants. *In re Citigroup ERISA Litig.*, 662 F.3d at 136, 138-39; *see also Edgar v. Avaya*, 503 F.3d 340, 346 (3d Cir. 2007) (noting guiding principle in trust law that "if the trust merely permits the trustee to invest in a particular stock, then the trustee's investment decision is subject to de novo judicial review.") (internal quotation marks omitted); *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 238 n.5 (3d Cir. 2005), *amended by* 2005 U.S. App. LEXIS 19862 (3d Cir. Sept. 15, 2005) (noting *Moench* presumption was "inapposite" where fiduciaries were

15

"simply permitted to make investments in employer securities") (internal quotation marks and alterations omitted); *Moench*, 62 F.3d at 571 (indicating presumption applies where "fiduciary presumptively is required to invest in employer securities," but not where the fiduciary is "simply permitted to make such investments").

Here, the tension between these competing concerns is weak at best, if not absent entirely. And, as noted, the SIP fiduciaries had no such "obligation" to offer the UBS Stock Fund. The UBS Stock Fund was one investment fund among many that the SIP Investment Committee had the discretion to offer. It was free to offer it, or not. The SIP Plan Document, particularly Section 9.2, clearly establishes that the UBS Stock Fund was to be treated no differently from any other investment fund that the SIP Investment Committee elected to offer to participants. Thus, the SIP fiduciaries should not benefit from an especial presumption that they behaved prudently merely by offering it to plan participants.

Accordingly, we hold that, because the SIP Plan Document does not require or even "strongly encourage" investment in the UBS Stock Fund, but instead simply presents it as one permissible investment option, fiduciaries of the SIP are not entitled to the presumption of prudence. The District Court erred in holding otherwise.

**II.  Additional Claims**

The District Court dismissed plaintiffs' claims for secondary liability, raised in Counts 3, 5, and 6 of the AC, reasoning that those claims were dependent upon, among others, plaintiffs' breach of the duty of prudence claim. Because we hold that plaintiffs' breach of the duty of prudence claim as to the SIP was wrongly dismissed, the secondary liability claims raised in

16

Counts 3, 5, and 6 based on the SIP and its fiduciaries[8] are also reinstated.   We affirm the District Court's dismissal of Counts 2 and 4, however, for the reasons stated in our companion Summary Order, filed today.

**CONCLUSION**

For the aforementioned reasons, the order of the District Court denying Plaintiffs-Appellants' motion to dismiss is **AFFIRMED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings consistent with this opinion.

---

[8] The District Court declined to address whether plaintiffs' complaint adequately alleged that the various named defendants were ERISA fiduciaries of the SIP and/or Plus Plan.   *In re UBS AG ERISA Litig.*, 2011 WL 1344734, at *4 n.11.   We decline to analyze this issue for the first time on appeal.