12-4064-cv
Majad v. Nokia, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of June, two thousand twelve.

PRESENT: REENA RAGGI,
PETER W. HALL,
DEBRA ANN LIVINGSTON,
*Circuit Judges.*

-----------------------------------------------------------------
JAVAD MAJAD, on Behalf of Nokia Retirement Savings and Investment Plan and All Other Similarly Situated Plan Participants and Beneficiaries, RYAN SHARIF, on Behalf of Nokia Retirement Savings and Investment Plan and All Other Similarly Situated Plan Participants and Beneficiaries,

*Plaintiffs-Appellants*,

v.                                          No. 12-4064-cv

NOKIA, INC., JOHN DOES 1-10, TIMO J. KARPPININ, ADELE LOUISE PENTLAND, RICHARD W. STIMSON, BENJAMIN C. ADAMS, DARREN A. BOWIE, CATHERINE CAMLEY, CECILY COHEN, JOSE CONEJOS, BILLIE HARTLESS, RONNIE KING, TINA KREMENETZKY, THOMAS LIBRETTO, BRIAN

MILLER, KIRSTY RUSSELL, MARK LOUISON,
                    *Defendants-Appellees,*

PERSONNEL COMMITTEE OF NOKIA BOARD
OF DIRECTORS, HENNING KAGERMANN, PER
KARLSSON, MARJORIE SCARDINO, KEIJO
SUILA, LINDA FONTENEAUX, NOKIA
RETIREMENT SAVINGS AND INVESTMENT
PLAN COMMITTEE,
                    *Defendants.*
-----------------------------------------------------------------

APPEARING FOR APPELLANTS:     JAMES G. FLYNN (Robert I. Harwood, Tanya
                              Korkhov, *on the brief*), Harwood Feffer LLP,
                              New York, New York; Peter A. Binkow, Casey E.
                              Sadler, Glancy Binkow & Goldberg LLP, Los
                              Angeles, California.

APPEARING FOR APPELLEES:      H. DOUGLAS HINSON (Emily Seymour Costin,
                              Dawn Wilson, *on the brief*), Alston & Bird LLP,
                              Washington, D.C. & New York, New York.

Appeal from a judgment of the United States District Court for the Southern District

of New York (George B. Daniels, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED that the judgment entered on September 14, 2012, is AFFIRMED.

Plaintiffs, suing on behalf of a putative class of Nokia Inc. employees who invested

in the Nokia Retirement Savings and Investment Plan (the "Plan"),[1] appeal from the

dismissal of their claims for compensatory and equitable relief under § 502(a)(2) and (a)(3)

---

[1] The Plan is a defined-contribution retirement savings plan meeting the definition of
an Eligible Individual Account Plan under ERISA.  <u>See</u> 29 U.S.C. § 1107(d)(3)(A).

2

of the Employee Retirement Income Security Act of 1974 ("ERISA"), see 29 U.S.C. § 1132(a)(2), (a)(3), as well as from the denial of leave to file a proposed amended complaint. Plaintiffs claim that defendants breached the fiduciary duties of prudence and loyalty owed under ERISA with respect to the Plan's offering of an investment fund consisting of American Depository Shares of common stock of Nokia Corp. ("Nokia" or "Nokia Corp.")—the Finnish parent company of plaintiffs' employer—during the period January 1, 2008, to the present.

We review the challenged dismissal de novo, construing the complaint, together with all attached and integral documents, in the light most favorable to plaintiffs. See Fait v. Regions Fin. Corp., 655 F.3d 105, 109 (2d Cir. 2011); Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). We also review de novo the district court's conclusions of law regarding the duties defendants owed under ERISA and the Plans. See LoPresti v. Terwilliger, 126 F.3d 34, 39 (2d Cir. 1997). Because the denial of leave to amend in this case was based on futility, we consider whether the proposed complaint's allegations are sufficient to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss. We review de novo the district court's determination that amendment of the complaint would be futile. See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185–86 (2d Cir. 2012). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Duty of Prudence

ERISA requires retirement plan fiduciaries to manage plan investments "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Mindful that a fiduciary must discharge his duties "in accordance with the documents and instruments governing the plan insofar as" ERISA requires, id. § 1104(a)(1)(D), we have recognized that fiduciaries may face conflicting demands with respect to offering employer stock as an investment option to employees. Thus, we afford such an offer a presumption of prudence, reviewing related fiduciary conduct only for "abuse of discretion." In re Citigroup ERISA Litig., 662 F.3d 128, 138 (2d Cir. 2011) (stating that "degree of discretion" to offer employer stock dictates depth of judicial review). "[A] fiduciary's failure to divest from company stock is less likely to constitute an abuse of discretion if the plan's terms require—rather than merely permit—[such] investment." Id. If plan "terms requir[e] or strongly favor[]" investment in employer stock," then "only circumstances placing the employer in a 'dire situation' that was objectively unforeseeable by the settlor could require fiduciaries to override plan terms." Id. at 140 (quoting Edgar v. Avaya, Inc., 503 F.3d 340, 348 (3d Cir. 2007)); accord Gearren v. McGraw-Hill Cos., 660 F.3d 605, 610 (2d Cir. 2011).

Plaintiffs contend that the district court improperly required them to plead such "dire circumstances" notwithstanding that Plan terms here do not mandate or strongly favor an

4

investment offering in Nokia stock. The assertion finds some support in the district court opinion denying leave to amend, see In re Nokia ERISA Litig., 10 Civ. 03306 (GBD), 2012 WL 4056076, at *2 (S.D.N.Y. Sept. 13, 2012) (citing In re Citigroup in concluding that plaintiffs had not demonstrated "dire situation" necessary for fiduciary liability). Meanwhile, the Plan, by its terms, allows for the offering of "investment funds as designated by the [Plan] Committee and approved by the Trustee," with no mention of Nokia stock. Plan 31, § 5.03, J.A. 211; see also id. at 44, § 8.01, J.A. 224 (providing for appointment of Plan Committee members by Nokia Inc. Board of Directors). While the Plan's purpose includes "permit[ting] Nokia Inc. to share its profits with its employees," id. at 1, J.A. 181, that could as easily refer to company bonus or matching contributions referenced elsewhere in the Plan as to Nokia stock ownership. We need not decide, however, the extent to which this statement of purpose, along with "policy considerations articulated by Congress" favoring employee investment in employer stock, In re Citigroup ERISA Litig., 662 F.3d at 139; see 29 U.S.C. § 1104(a)(2) (suspending diversification and prudence requirements insofar as they relate to Eligible Individual Account Plans' holding of employer stock), warrant heightened deference in reviewing the challenged fiduciary decisions, see Taveras v. UBS AG, 708 F.3d 436, 446 (2d Cir. 2013) (holding fiduciaries unentitled to presumption of prudence where plan document did not expressly encourage offering company stock, but rather "present[ed] it as one permissible investment option"). Here, the proposed amended complaint fails to state an ERISA prudence claim under any standard of review.

5

Plaintiffs assert that the "value of Nokia Stock was artificially inflated during the Class Period due to undisclosed business problems, rendering this stock an unduly risky investment for retirement." Appellants' Br. 9. In support, they cite to purported warning signals, including: (1) a widely reported drop of more than 70% in Nokia's share price; (2) delays in bringing new products to market, exacerbating price declines for Nokia's existing mobile phones; (3) production and sales problems leading to large operating losses; and (4) the resignation and termination of top Nokia management, including its Chairman, Chief Executive Officer, and an Executive Vice President. There is no allegation, however, that these matters were secret. The prudence analysis does not turn on whether information disclosed to the market caused a share price decline, even a substantial one. "[R]ather, we must consider the extent to which plan fiduciaries at a given point in time reasonably could have predicted the outcome that followed." In re Citigroup ERISA Litig., 662 F.3d at 140.

Nor can plaintiffs show imprudence in offering Nokia stock by reference to a February 2011 memo, in which Nokia's newly appointed CEO, Steven Elop, drawing on input from Nokia "shareholders, operators, developers, suppliers" and employees, discussed the company's decreasing market share and concluded that Nokia was "standing on a 'burning platform.'" Am. Compl. ¶ 215, J.A. 2118. Plaintiffs allege that Elop's internally circulated assessment was not publicly revealed until its February 9, 2011 appearance in the Wall Street Journal. At the same time, however, plaintiffs assert that this negative outlook was "perhaps the worst-kept secret at Nokia," having "already been publicly announced by an industry

6

analyst before Elop arrived." Appellants' Br. 19. Even if we were to assume that there existed some period of time during which Nokia insiders allegedly knew that its "platform" was "burning" while its employees and the public did not, this theory of liability fails, as the district court recognized, because no allegations plausibly ascribe knowledge of Nokia's overall financial straits, real or perceived, to Plan fiduciaries. See In re Nokia ERISA Litig., 2012 WL 4056076, at *3; In re Nokia ERISA Litig., 10 Civ. 03306 (GBD), 2011 WL 7310321, at *4 n.7 (S.D.N.Y. Sept. 6, 2011); see also Gearren v. McGraw-Hill Cos., 660 F.3d at 610 (requiring that plan fiduciaries "reasonably have foreseen, based on the information alleged to have been available to them at the time, the sharp decline in the price of [employer] stock").

Specifically, plaintiffs fail to allege facts supporting an inference that fiduciaries within U.S.-based subsidiary Nokia Inc. were aware of problems roiling Finnish parent company Nokia Corp., whose market activities spanned the globe. See Gearren v. McGraw-Hill Cos., 660 F.3d at 610 (refusing to charge fiduciaries with actual or constructive knowledge of employer's overall financial condition where "allegations relate[d] entirely to operations within" subgroup of one of company's "three operating segments"). While plaintiffs allege that certain Nokia Inc. directors also were senior employees of Nokia Corp., none of these directors is alleged to have served on the Plan committee or possessed authority over Plan investments during the relevant period. Rather, as alleged, the Plan committee consisted of directors, officers, and human resource employees of Nokia Inc. alone.

7

Plaintiffs' bald contention that it is "plausible" to impute notice of Nokia Corp.'s internal workings to those with operational roles at Nokia Inc. or to conclude that Plan fiduciaries were among the sources of information mentioned in Elop's February 2011 "burning platform" memo, Appellants' Br. 21, is insufficient to withstand a motion to dismiss, see Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (holding that "plaintiff armed with nothing more than conclusions" is not entitled to discovery).

Accordingly, plaintiffs' ERISA prudence claim was appropriately dismissed.

2.    Remaining Claims

Plaintiffs assert that defendant fiduciaries also breached their ERISA duty of loyalty in failing to relay complete and accurate information about Nokia's business prospects to Plan participants. See 29 U.S.C. § 1104(a)(1) (requiring ERISA fiduciaries to act "solely in the interest of the participants and beneficiaries"). Citing to trial-level decisions in In re Citigroup and Gearren v. McGraw-Hill that were later affirmed, the district court correctly dismissed this disclosure-based claim because (1) ERISA imposed no affirmative obligation on defendants to update Plan participants about Nokia's financial condition, and (2) any alleged misstatements were not made in a fiduciary capacity. See In re Nokia ERISA Litig., 2011 WL 7310321, at *4–5; see also In re Citigroup ERISA Litig., 662 F.3d at 142–45; Gearren v. McGraw-Hill Cos., 660 F.3d at 610–11. In any event, because plaintiffs' appellate briefing contains no specific argument regarding this claim, we deem it abandoned. See Jackler v. Byrne, 658 F.3d 225, 233 (2d Cir. 2011).

8

Plaintiffs' claims for failure-to-monitor and co-fiduciary liability were properly dismissed for their failure adequately to plead a predicate breach of fiduciary duty.  See In re Citigroup ERISA Litig., 662 F.3d at 145 (noting that such derivative claims "cannot stand" absent underlying violation).

We have considered plaintiffs' remaining arguments and conclude that they are without merit.  The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court